628 So.2d 251 (1993)
STATE of Louisiana
v.
Calvin CITTADINO.
No. 93-KA-502.
Court of Appeal of Louisiana, Fifth Circuit.
December 15, 1993.
*253 Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Robert Grant, Dorothy A. Pendergast, Leigh Anne Wall, Asst. Dist. Attys., (Louise Korns, of counsel), Gretna, for plaintiff-appellee.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
The defendant-appellant appeals his conviction under a multiple offender bill of information stating he was not adequately advised of his privilege against self-incrimination when he entered guilty pleas in his prior convictions. He also appeals his jury conviction of armed robbery claiming the evidence does not support such a finding. We affirm.

ISSUES
We are called upon to determine two specific issues:
(1) Whether appellant's guilty pleas in his prior convictions were valid so that they could support a finding by the trial court that appellant was an habitual offender, and
(2) Whether the evidence presented at trial was sufficient to support a conviction of armed robbery.

FACTS
Appellant was charged with three counts of armed robbery occurring on March 1, March 3 and August 9, 1992. He was convicted by a twelve-person jury on January 27, 1993 of first degree robbery on Counts I and III, and armed robbery on Count II.
On February 5, 1993, the State filed a bill of information charging appellant as an habitual offender under La.R.S. 15:529.1 on the basis of his armed robbery conviction on January 27, 1993. The bill of information alleged three prior felony convictions: (1) second degree battery on March 16, 1988; (2) possession of cocaine on March 9, 1990; and (3) theft between $100 and $500 on June 22, 1992. The evidence indicates that appellant pled guilty to all three of the prior convictions.
Prior to the hearing on the habitual offender charge, the trial court sentenced appellant to 40 years at hard labor for each of the two first degree robbery convictions and 99 years at hard labor for the armed robbery conviction all of which was to be served consecutively. On May 21, 1993, the trial court found appellant to be a fourth felony offender. As a result, the trial court vacated the original armed robbery sentence of 99 years and imposed a sentence of natural life.[1]

ANALYSISISSUE ONE
Our jurisprudence mandates there are three fundamental rights a defendant waives when he pleads guilty: (1) the right to a trial, (2) the right to confront one's accusers and (3) the privilege against self-incrimination. In order for there to be a valid guilty plea and waiver of these rights, the State must affirmatively show that defendant was advised of these rights and that he fully understood that by pleading guilty he waived those rights. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
While this appeal was pending the Louisiana Supreme Court handed down State v. Shelton, 621 So.2d 769 (La.1993), which set forth a revised scheme concerning the burden of proof required in habitual offender proceedings. Specifically, the court stated
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in *254 the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
Id. at 779-80 (footnotes omitted; emphasis as found in the original). Here, the State met its initial burden of proof. During the habitual offender hearing on March 19, 1993, the State introduced into evidence copies of guilty plea forms signed by appellant and his attorney.[2] In addition, the State introduced the transcripts from each of the three Boykin hearings on the guilty pleas. Appellant did not object to this evidence. Due to his failure to object, we note that appellant is procedurally barred from raising the issue of the sufficiency of the State's proof of a prior conviction on appeal. The proper remedy is an application for post-conviction relief. However, in the interest of judicial economy we will address appellant's claim. State v. Terrebone, 590 So.2d 105 (La.App. 5th Cir. 1991).
Once the State introduced the above evidence, the burden shifted to appellant to prove that there was some infringement on his rights in the taking of his guilty plea. While appellant did not present any evidence at the habitual offender hearing, he now asserts and attempts to prove that his guilty pleas and resulting waiver of rights were invalid because he was not adequately advised of his privilege against self-incrimination. More specifically, he was not advised that the privilege against self-incrimination extended to trial.
We have previously addressed the adequacy of the waiver of constitutional rights in a guilty plea similar to the waiver now challenged by defendant. We determined that a defendant's failure to be specifically informed of his right against self-incrimination at trial did not render the guilty plea invalid where the trial court conducted a colloquy with defendant ascertaining he had been advised of his Boykin rights by his attorney and he understood that by pleading guilty he was waiving those rights. State v. Terrebone, supra; State v. Hensley, 537 So.2d 857 (La. App. 5th Cir.1989); and State v. Terrase, 468 So.2d 729 (La.App. 5th Cir.1985), writ denied, 472 So.2d 30 (La.1985).
Appellant has asked us to reconsider our prior decisions in that he does not see how they are consistent with the earlier Louisiana Supreme Court decisions of State v. Robicheaux, 412 So.2d 1313 (La.1982) and State v. Age, 417 So.2d 1183 (La.1981). In those cases, the Louisiana Supreme Court held that where a defendant is not told that the privilege against self-incrimination extends to trial he has not made a knowing and voluntary waiver of that right. However, in State v. Yarbrough, 418 So.2d 503 (La.1982), the court noted that it was moving away from a rigid application of this rule. In that case, defendant was advised as follows: "`BY THE COURT: You also give up your right to remain silent, your right against self-incrimination. You are waiving that because you are incriminating yourself when you plead guilty. Do you understand that? `BY DEFENDANT YARBROUGH: `Yes, sir.'"
The court found that this portion of the record indicated that defendant was adequately advised of his Boykin rights.
*255 In all of appellant's Boykin hearings, the trial court began with the question:
Mr. Cittadino, your attorney has told me that he has advised you of your right to a trial by jury; to confront accusers and against self-incrimination and that by entering this plea of guilty, you are waiving or giving up these rights.
He has also indicated to me that you have advised him that you understand these things, is that correct?
MR. CITTADINO:
Yes.
And, in all three hearings, appellant replied affirmatively.
We are to consider the entire record to determine whether defendant understood and voluntarily waived his Boykin rights. State v. Terrebone, supra. We find that where a defendant is represented by counsel, it is reasonable to presume that his attorney has sufficiently explained to defendant that the privilege against self-incrimination extends to trial. Therefore, we find that appellant failed to meet his burden of proving that his prior convictions were tainted with invalid guilty pleas.

ANALYSISISSUE TWO
Our standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Henry, 551 So.2d 9 (La. App. 4th Cir.1989). To sustain a conviction for armed robbery, the State must prove (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. La.R.S. 14:64.
A "taking" under La.R.S. 14:64 is defined as "the slightest asportation of anything of value...." State v. Conrad, 620 So.2d 366, 369 (La.App. 5th Cir.1993). The victim testified that after defendant demanded the money, she placed between $35 and $40 from the cash register in a bag. The defendant then "took the bag ... [and] walked out of the store, and he went towards the Holiday Inn...."
The money taken was not taken from the victim's person but rather it was taken from a cash register within the victim's immediate control. The victim was the cashier on duty at the time of the alleged robbery. In a robbery case, it is the felonious taking that is the issue more than the perfect title of the alleged owner. Therefore, it is the victim's greater possessory interest in the property stolen vis-a-vis the accused that is key in proving a robbery. State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
As for the fourth element, use of fear or intimidation, we see that the victim complied with defendant's demand for money because she feared for her life. (R. 442). The victim stated that defendant pointed a gun at her face in between her eyes. (R. 442). We find that the pointing of a gun, plastic or not, at a person is sufficient to meet the fourth requirement of armed robbery. See State v. Bartley, 564 So.2d 1297 (La.App. 5th Cir.1990).
The fifth element requires that the defendant be armed with a dangerous weapon. A "dangerous weapon" is defined as any instrumentality which in the manner used is calculated or likely to produce death or great bodily harm. La.R.S. 14:2(3). Our jurisprudence has indicated that a toy gun can be considered a dangerous weapon. State v. Green, 409 So.2d 563 (La.1982). In order to find that the plastic gun in this case constituted a dangerous weapon, the jury must find that the interaction between the offender and the victim created a highly charged atmosphere whereby there was a danger of serious bodily harm resulting from the victim's fear for his life. State ex rel. Richey v. Butler, 572 So.2d 1043 (La.1991).
The victim testified that defendant pointed what she believed to be a real gun at her face. She also stated that she thought defendant was going to kill her. The jury obviously believed the victim and returned a guilty verdict for armed robbery. The jury is the trier of fact and, on appeal, we will not disturb the credibility determinations *256 of the jury. State v. Mayeaux, 570 So.2d 185 (La.App. 5th Cir.1990), writ denied, 575 So.2d 386 (La.1991). Furthermore, under the standard of Jackson v. Virginia, supra, we cannot say the evidence in the record, as pointed out above, is insufficient to support the jury conviction on armed robbery.
For the reasons assigned, the defendant's convictions and sentence by the trial court are hereby affirmed.
AFFIRMED.
NOTES
[1] The transcript of the sentencing hearing on the habitual offender charge dated May 21, 1993 indicates that the trial court inadvertently vacated the sentence for Count I, which was for the first degree robbery conviction. It is apparent from the record, particularly the commitment form, that the trial court intended to vacate the sentence for Count II, which was for armed robbery and which served as the basis for the habitual offender bill of information.
[2] We note that in defendant's guilty plea form for theft, State Exhibit 10, a page is missing from the record. More specifically, the page requiring the signature of the attorney is missing. However, we see from the Boykin hearing dated June 22, 1992 that defendant was in fact represented by counsel.